UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————x

UNITED STATES OF AMERICA

                    V.                            15 CR 208 (CM)

SHEHZAD JOHN,

             Defendant.

———————————————————————————x

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, C.J.:

On August 1, 2016, Shehzad John was sentenced by this Court to 71 months' imprisonment, for his role in attempting to export firearms listed on the United States Commerce Control List, a violation of Title 50, United States Code, Sections 1705(a) and (c), and Title 15, Code of Federal Regulations, Sections 736.2, 742.17, 764.2, and 774. John is presently incarcerated at FCI Morgantown—his projected release date is September 23, 2021.

Before the Court is John's motion for compassionate release filed pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), P.L. 115-391. John claims that he should be granted compassionate release based (1) on the increased threat of contracting COVID-19 in prison facilities such as FCI Morgantown, and (2) his family circumstances, namely, that "his wife who is the primary caregiver of their young children is saddled with also having to take care of the defendant's parents who now have declining medical conditions that make it impossible for them to be independent." (Defendant's Motion, Docket 73 at 15).

1

The Government opposes John's motion arguing that he has failed to establish extraordinary and compelling reasons warranting release and that, even if he had, a reduction in sentence would not be consistent with the sentencing factors the Court must consider at 18 U.S.C. § 3553(a).

The motion is denied.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release.[1] Until recently, this Court—

---

[1] "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g.*, United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992).

and many of my district court colleagues—looked to United States Sentencing Guidelines §

1B1.13 (the applicable Guidelines section for sentencing reductions pursuant 18 U.S.C. §

3582(c)(1)(A)(i)), for guidance on what constituted "extraordinary and compelling

circumstances."[2] That changed on September 25, 2020, when the United States Court of Appeals

for the Second Circuit held that § 1B1.13 is not applicable to a motion brought by a defendant in

the district court. *United States v. Brooker* No. 19-32180-CR, 2020 WL 5739712, at *6 (2d Cir.

Sept. 25, 2020). The Second Circuit reasoned that the language of § 1B1.13—language that has

not been updated since the passing of the First Step Act—addressed only sentencing reduction

motions initiated by the Bureau of Prisons. *Id.* In making clear that the district court was not

constrained by the narrow grounds for granting compassionate release in § 1B1.13, the Second

Circuit declared unequivocally that "district courts have discretion to consider the full slate of

extraordinary and compelling reasons that an imprisoned person might bring before [the court] in

---

[2] The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See* § 1B1.13 comment (n.1). For example, the medical circumstances ground reads as follows:

(A)   Medical Condition of the Defendant.—

    (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

    (ii)   The defendant is—

        (I)   suffering from a serious physical or medical condition,

        (II)   suffering from a serious functional or cognitive impairment, or

        (III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

3

motions for compassionate release," and that "neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id* at *7.

What Brooker did not change, however, is the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

### John's Motion in the Bureau of Prisons

On June 29, 2020, John filed a written request for compassionate release to the Warden at FCI Morgantown. The Warden denied the request on July 21, 2020.  Accordingly, John has exhausted his administrative remedies with the BOP, and his present motion for compassionate release is properly before this Court.

### John's Motion Before this Court

John's has not met his burden of establishing that there exists "extraordinary and compelling circumstances" warranting his release.

In regard to the risk of contracting COVID-19 at FCI Morgantown: The implementation of the Bureau of Prison's National Multi-Phase Action Plan for combatting COVID-19, *(see BOP COVID-19 Action Plan*, https://www.bop.gov/ resources/ news/20200313_covid-19.jsp., (periodic updates to plan omitted)) at Morgantown prison, appears to have been quite successful. According to BOP website, there have been 260 COVID-19 tests administered at FCI Morgantown since the Pandemic began, yielding 15 positive results. *See* BOP COVID-19

4

Dashboard, https://www.bop.gov /coronavirus/ (last visited November 9, 2020.  Currently, there

are no inmates or staff at FCI Morgantown testing positive for the virus.[3]

Even if FCI Morgantown were a COVID-19 hotspot, which apparently it is not, John is

not the type of inmate whom this Court would consider releasing because of the threat of

contracting the virus.  John's medical records indicate that he is a relatively healthy forty-two

years old man, with no major medical problems. (*See* Government Response, Ex. A). Nothing in

his records suggests that he is among the category of persons the CDC has determined to be at

high risk of suffering a severe outcome from COVID-19.[4]

As for John's argument that he should be released early to help his wife who is struggling

to care for their young children and his unwell and aging parents, it is truly unfortunate that

John's incarceration has placed that burden on his wife; but that does not constitute an

extraordinary and compelling reason to shorten his otherwise justly deserved sentence. *See infra*.

While the Court is no longer bound by the Application Notes to Guidelines Section 1B1.13, the

criteria for granting compassionate release on family circumstances grounds enumerated in

Application Note 1(C) is instructive. Under Note1(C), release is authorized only in two limited,

compelling and extraordinary circumstances: (i) "the death or incapacitation of the caregiver of

the defendant's minor [children]" or (ii) "the incapacitation of the defendant's spouse. . . when

the defendant would be the only available caregiver for [that spouse]." U.S.S.G. § 1B1.13, App.

---

[3] After dealing with numerous compassionate release motions over the last several months, I have learned that BOP statistical reporting for a particular facility does not always comport with, and often understates the actual infection rate at that facility.

[4] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019- ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (visited October 4, 2020, 2020) (emphasis added).

Note 1(C).  Although, the Court has been freed by *Brooker* to consider the myriad of family

circumstances that might warrant granting compassionate release, § 3582(c)(1)(A)(i) still only

authorizes release where the family circumstances are truly "extraordinary and compelling," and

not merely the inevitable circumstances families face when a family member is incarcerated.

Being separated from your wife and children and unavailable to care for aging parents are but

two of the sad and inevitable consequences of incarceration.

Even if John had established that his health, or his family circumstances, or some other

reason "that an imprisoned person might bring" in a compassionate release motion augured in

favor of granting his release, the sentencing factors set forth at 18 U.S.C. § 3553(a) would

nonetheless counsel against it—chief among them, in this case, is the nature and circumstances

of the offense.

John was caught attempting to board an airplane to Pakistan at John F. Kennedy

International Airport, with his luggage filled with weapons: five AR-15-style semi-automatic

assault rifles, with parts disassembled and individually wrapped in packaging and tape; one .9

mm Glock 19 handgun; one .9 mm FN Herstal handgun; and various firearm components and

accessories, including, among other things, rifle scopes and laser sights.  While trying to smuggle

weapons into Pakistan is in and of itself a most serious offense, the way in which John obtained

the weapons makes his crimes all the more egregious.  John obtained the weapons by using

vulnerable people as straw purchasers, giving them trivial remuneration, and telling them to lie to

federal authorities to conceal his role in the purchases. As I said at sentencing:

> I think this whole thing was a front for what you tried to do. You thought it was a
> clever idea; you didn't know how to do it and you got caught immediately. And a
> strong message needs to be sent about that and a strong message needs to be sent
> about the obstruction of justice. I wouldn't sentence you at the bottom end of the

6

guidelines for all the tea in China. I want the word to get out that people who employ other people—poor people, people who are down on their luck, people who are being abused, people who are stuck on drugs—to be straw purchasers of guns in exchange, for the little bit of money that they need to feed the baby, feed the habit, pay the rent, that those people will go to jail for a very long time.  I also want to send a very strong message that lying and trying to get other people to lie is not just something that isn't tolerated, it's something that multiplies the sentence.

Sentencing Tr. 110.

John will be released sometime early next year to a structured BOP community supervision program (halfway house), where he will receive counseling and provided with resources to help him transition back into society. It is in society's interest that John go through that whole process.

The motion for compassionate release is denied.

Dated: November 9, 2020

_____
Colleen McMahon
Chief Judge

7